**Ennis DAVIS, Plaintiff,**

v.

**CONSTRUCTION MATERIALS, A DIVISION OF ANCAR ENTERPRISES INCORPORATED, Defendant.**

**Civ. A. No. 81–C–1816–S.**

United States District Court,
N.D. Alabama, S.D.

March 11, 1983.

Robert L. Wiggins, Jr., Birmingham, Ala., for plaintiff.

Philip Butler, Montgomery, Ala., for defendant.

## MEMORANDUM OPINION

CLEMON, District Judge.

### Defendant's Motion For A New Trial

This cause came before the Court on defendant's Motion For A New Trial.[1] In its motion, defendant alleged a denial of its constitutional due process and equal protection rights by the Court's disallowance of the testimony of defense witnesses John Crews, Gregory Stewart Crews and Jim Campbell. The testimony of these witnesses was initially disallowed because of defendant's unexcused failure to comply with the pretrial order and the Federal Rules of Civil Procedure.

At the hearing on the motion for a new trial, counsel for defendant conceded that the testimony of John Crews would be cumulative. After hearing an offer of proof with respect to the testimony of Jim Campbell, the Court concluded that his testimony would be either cumulative or irrelevant.

The Court, in effect, re-opened the record to receive the testimony of Gregory Crews, an officer of the defendant Company, and Richard M. Hassell, an officer of the Alabama Unemployment Compensation Agency. After hearing Gregory Crews' testimony and assessing its credibility, the Court adheres to its earlier finding that Gary Corbett unlawfully terminated the plaintiff because of plaintiff's race or color.

Based on Richard Hassell's testimony and the exhibits introduced into evidence through him, the Court finds that plaintiff's interim earnings totaled $1,143.52, rather than $912.00, as earlier found by the Court. Therefore, plaintiff's backpay award must be reduced by $231.52.

### Attorney's Fees For Post-Trial Services

Plaintiff has orally moved the Court to award additional attorney's fees for post-trial services rendered.

In consideration of the factors outlined in *Johnson v. Georgia Highway Express Co.,* 488 F.2d 714 (5th Cir.1974), and based on the facts presented at the hearing, the Court finds and concludes that plaintiff's attorney's fee award should be increased by $3,000.00.

### Prejudgment Interest

Plaintiff has also moved the Court for prejudgment interest on his backpay award of $17,783.17.

In *Merriweather v. Hercules,* 631 F.2d 1161 (5th Cir.1980), the Circuit[2] simply noted that an award of backpay, or interest on backpay, lies within the discretion of the

---

1. These written findings and conclusions supplement the oral findings and conclusions dictated into the record by the Court at the close of the hearing on defendant's Motion For A New Trial.

2. The decisional law of the "old Fifth" Circuit, as it existed prior to October 1, 1981, is the controlling law of the Eleventh Circuit, unless overturned by an *en banc* decision of the latter court. *Bonner v. City of Pritchard,* 661 F.2d 1206 (11th Cir.1981).

trial court, and that court's decision on the issue will be overturned only upon a showing of abuse of discretion. *Id.* at 1168.

In exercising its discretion, the Court is immediately impressed by the fact that in the ordinary Title VII discharge case, the culpable employer has been unjustly enriched by his unlawful conduct. That is to say, the employer has had full and unfettered use of monies which, had it complied with the law, would have been paid out to the victim of the unlawful discharge over a period of time.

In the meanwhile, the victim of the unlawful discharge is often subjected to the severe and sometime devastating financial crisis occasioned by the loss of a job and the inability to find a new one. Deprived of income, he must forego all of the luxuries and many of the necessities of life or, if he is fortunate, seek to sustain himself by borrowing money at double-digit interest rates. When his rights are finally adjudicated some years later, a simple award of backpay, without prejudgment interest, certainly does not place him in the position he would have occupied *but for* the unlawful discrimination. For obviously, the backpay award does not have the same economic impact as weekly or monthly pay checks spread over a two or three year's period.

█ One of the primary purposes of the remedial provisions of Title VII is to make whole the victims of unlawful discrimination.

The backpay provision of Title VII was modeled on the backpay provisions of the National Labor Relations Act ("NLRA"); and NLRA standards for the calculations of Title VII backpay awards were expressly adopted by Congress. *Brown v. A.J. Gerrard Mfg. Co.,* 695 F.2d 1290 (11th Cir.1983); citing *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 419–20, 95 S.Ct. 2362, 2372–73, 45 L.Ed.2d 280 (1975). See also, *Pettway v. American Cast Iron Pipe Co.,* 494 F.2d 211, 252 (5th Cir.1974); *Johnson v. Goodyear Tire and Rubber Co.,* 491 F.2d 1364, 1377 (5th Cir.1974).

For more than twenty years, it has been the policy of the National Labor Relations Board ("NLRB") to award interest on backpay entitlements. *NLRB v. Globe Products Corp.,* 322 F.2d 694 (4th Cir.1963). In approving the policy, the Fifth Circuit stated:

... we think that the only way the employees could be made whole for their loss of earnings [is] for them to draw interest on the amounts to which they became entitled from the date of their illegal discharge....

*Winn-Dixie Stores, Inc. v. NLRB,* 413 F.2d 1008, 1010 (5th Cir.1969).

In 1977, the NLRB adopted the Internal Revenue Service ("IRS") "adjusted prime rate", rather than utilizing the traditional flat six percent interest rate. *Florida Steel Corp.,* 231 NLRB No. 117, 96 LRRM 1070, *enforcement denied on other grounds, sub nom.; N.L.R.B. v. Florida Steel Corp.,* 586 F.2d 436, 451 (5th Cir.1978). The adjusted prime rate was adopted by the NLRB because the flat percentage rate was not in line with current economic conditions. Moreover, the sliding interest scale is related to the private sector money market, subject to periodic adjustments consistent with changing economic conditions, and it is easy to administer. *Id.*

As Judge Renfrew has noted,

The same reasons the NLRB found persuasive for utilizing the IRS rate, namely 'encouraging timely compliance with Board Orders, discouraging the commission of unlawful employment practices, and more fully compensating discriminatees for their economic losses' are equally applicable to awards of backpay under Title VII.

*E.E.O.C. (U.S.A.) v. Pacific Press Pub. Assn.,* 482 F.Supp. 1291, 1320 (N.D.Cal. 1979).

█ The Court feels that the proper exercise of discretion on the prejudgment interest issue leads to the same conclusion as that reached by the Supreme Court on the issue of attorney's fees in Title VII cases: Prejudgment interest should ordinarily be awarded in Title VII cases, except in those instances where special circumstances

would render such award unjust. *Newman v. Piggie Park Industries,* 390 U.S. 400, 402, 88 S.Ct. 964, 966, 19 L.Ed.2d 1263 (1968).

It follows that plaintiff is entitled to pre-judgment interest based on the IRS's adjusted prime rates for the period of liability. For the period involved in this lawsuit, the applicable interest rates are:

> April 6, 1981—December 31, 1981—12 percent
>
> January 1, 1982—December 29, 1982—20 percent

Based on the Court's calculations, prejudgment interest in the amount of Five Thousand One Hundred Twenty Five Dollars and 33/100 ($5,125.33) is due to be awarded plaintiff.

By separate order, a judgment shall issue based on the conclusions reached in this opinion.